In the United States District Court
Northern District of Texas
Dallas Division

| | | |
|---|---|---|
| Teresa L. McLeod | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-cv-3134-E |
| | § | |
| Floor and Décor Outlets of America, Inc. | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

## Plaintiff's First Amended Complaint

Plaintiff Teresa L. McLeod ("McLeod" or "Plaintiff") files this First Amended Complaint against Floor and Décor Outlets of America, Inc. ("F&D" of "Defendant") and shows:

## Parties

1. Plaintiff Teresa L.  McLeod is an individual citizen of Texas.

2. Defendant Floor and Décor Outlets of America, Inc. d/b/a Floor and Decor is a foreign corporation doing business in Texas.  It may be served by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas TX 75201-3136.

## Venue and Jurisdiction

3. Venue is proper in Dallas County because the Defendants do business in Dallas County.

4.    This Court has federal jurisdiction over the claims asserted under Title VII and 42 U.S.C. § 1981.

<u>**Factual Background**</u>

5.    F&D hired McLeod on August 28, 2015 as Operations Manager of its Dallas Store 104.  F&D is a specialty retailer selling hard surface flooring products, such as tile, wood and stone. As the Operations Manager, McLeod was generally responsible for the Dallas 104 store operations.

6.    F&D had a Chief Executive Merchant at each store.  McLeod, as Operations Manager, reported to the Chief Executive Merchant.

7.    When F&D hired McLeod, it treated McLeod differently than the male Operations Managers.  F&D did not allow McLeod to attend the standard Operations Manager multi-week training program. McLeod asked all of the Chief Executive Merchants to whom she reported and the District Manager to attend the training programs multiple times. However, F&D did not send McLeod to the training program. In this program, McLeod would have been paired with a mentor and working with a mentor at other store locations. Upon information and belief, F&D sent the male Operations Managers in the same region to attend this training program.

8.    When McLeod started, she first reported to Greg Morrical, then Dallas 104 Chief Executive Merchant. McLeod received excellent reviews from Morrical and received the

top raise. McLeod had no issues with her performance and passed the ROM audit with a score of 80% in her first 4 months of employment.

9.    In 2017, Adam Howell became the Chief Executive Merchant at Dallas 104. Again, McLeod's performance was excellent and she received positive reviews and the top raise. McLeod completed 4 audits, all of which had passing results and her inventory shrink result was the best in the region.

10.    Despite not being allowed the required training, McLeod did well and received good performance reviews from her supervisors and the top raises allowed.

11.    In 2017, McLeod discovered that her supervisor had been falsifying company documents. McLeod did as F&D required her to do, which was to report this to F&D. After McLeod reported it for the second time, this Chief Executive Merchant was terminated by F&D.

12.    F&D replaced the terminated Chief Executive Merchant with Adam Martin in May 2017. Martin was a friend of the Chief Executive Merchant terminated.

13.    When Martin arrived at Dallas 104, Martin immediately targeted McLeod and subjected her to different terms and conditions in her employment than the male employees.

14.    F&D, through Martin, continued to subject McLeod to differing terms and conditions in her employment than the male Operations Managers. Though McLeod

asked Martin to allow her to attend the Operations Manager training, Martin refused to do so.

15.  F&D required McLeod to train Martin in his duties.  When McLeod was training Martin, Martin told her several times that "if anything happens and someone is getting fired, it's going to be you because I'm not going anywhere."  McLeod found this statement to be both threatening and bullying.

16.  McLeod reported to Martin that approximately five Hispanic/Latino female employees were being sexually harassed by a male sales employee.  McLeod kept pushing Martin to reprimand the sales employee for the harassment.  Martin refused to do so.

17.  In January 2018, after McLeod engaged in protected activity by reporting the discriminatory treatment  of Hispanic/Latino employees directly to Martin,  F&D, through Martin, gave McLeod her first negative performance review. This performance review contained false and inaccurate information.  Despite receiving this unjustified and false negative performance review, McLeod received the top pay raise available to her.

18.  In early February 2018, McLeod warned F&D that Dallas 104 would fail the Store Execution Review audit.  McLeod notified her superiors in advance that the store would not pass and explained the reasons it would not pass.

19.  F&D Dallas 104 did fail the SER audit in February as McLeod advised her supervisors it would.

20.    On January 31, 2018, F&D's regional Manager Mickey O'Sullivan cursed at McLeod in a meeting.  McLeod objected to his hostile and offensive treatment of her and told him he could not speak to her in such a manner.  McLeod requested that he leave her office.  O'Sullivan was angry with McLeod for objecting to his use of profanity towards her and for her request he leave her office.

21.    On March 7, 2018, McLeod engaged in protected conduct by emailing to Tim Banks, the Regional Operations Manager, advising him of concerns she had about racially discriminatory activity by Adam Martin, Chief Executive Merchant of Store 104. A copy of McLeod's email is attached as Exhibit 1. Specifically, McLeod noted that she had interviewed candidates who were racial minorities and that Martin would not allow her to hire them after telling her he was "trying to change the image here."

22.    McLeod advised F&D that one candidate interviewed was an African American female.  Martin glanced at that candidate and told McLeod "I wouldn't have even talked to her" and he was "trying to change the image here."

23.    The other two candidates were a Hispanic/Latino man and woman who were both experienced and qualified to work for F&D.  When McLeod discussed putting the Hispanic female on the front end of the store, Martin told McLeod that the Hispanic female could work in the warehouse, but not the store.  Martin told McLeod that the Hispanic male could work overnight in the warehouse.  Again, Martin told McLeod he was "trying to change the image."

24.   Because of Martin's objections, McLeod did not initially hire those employees even though she felt all three candidates had the potential to be great hires and she needed to hire additional staff for the store. However, after a few days, McLeod, objecting to Martin's discriminatory instructions, told Martin that she was going to bring the two Hispanic employees into the store.  Unfortunately, by the time McLeod was able to reach back out to the Hispanic/Latino employees, they had moved on to other opportunities.

25.   F&D, through Banks, acknowledged receipt of McLeod's email. Banks told McLeod that Banks needed to share her email with Mickey O'Sullivan, who was Martin's supervisor.  Banks told McLeod that he needed to share the email with Mickey O'Sullivan because O'Sullivan is "Adam's direct sup and needs to be the one who is holding Adam and the store team accountable."  Upon information and belief, Banks shared the contents of McLeod's email to O'Sullivan. Upon information and belief, O'Sullivan shared the contents of McLeod's email directly with Martin while acting in his capacity as Martin's direct supervisor charged with the responsibility of holding Martin accountable. O'Sullivan had been in contact with Martin and had been in the store where McLeod worked in the days after McLeod sent her email.

26.   Just two days after McLeod complained of this racially discriminatory conduct, F&D, through Martin, gave McLeod a letter of concern on March 9, 2018.  That letter alleged that McLeod's performance was deficient and gave her 60 days to improve her performance.

27.  F&D alleged that McLeod's performance was deficient in store staffing.  Yet, as McLeod had noted in her March 7, 2018 email, F&D had denied McLeod the ability to hire three qualified candidates she had interviewed for discriminatory reasons because Martin was "trying to change the image."

28.  F&D fired McLeod on April 9, 2018—just one month after issuing the Letter of Concern.  Upon information and belief, Martin, working in conjunction with F&D's Human Resources and Regional Management, was the decisionmaker in firing McLeod. Upon information and belief, F&D Regional Management team, including Mickey O'Sullivan and Tim Banks, may have been consulted or participated in the decision to terminate McLeod because Martin was not allowed to terminate an employee without approval under company policy.

29.  Before being fired, McLeod was close to meeting the metrics required to show the desired level of improvement on the Letter of Concern.  McLeod had done so in just 17 days—even though the Letter of Concern allotted her 60 days to improve her performance.  McLeod met with Martin on March 30, 2018 or April 6, 2018 to give him an update on the Letter of Concern items.  Martin told McLeod they were in good shape and that he saw great progress.  Martin told McLeod that the only item he still saw as a problem was the warehouse conditions.  McLeod explained that she had a team of employees working overnight on April 13, 2018 to complete that task. Thus, at that time, the items on the Letter of Concern had been corrected or were being corrected.

30.   F&D fired McLeod before the 60 days was completed because it did not want to allow McLeod a fair chance to succeed.

31.   McLeod submitted an online Inquiry Information form to the EEOC on July 9, 2018. A copy of McLeod's online Inquiry Information form is attached as Exhibit 2.   After McLeod submitted the online Inquiry Information form, the EEOC prepared a Charge on EEOC Form 5 for McLeod.   The Form 5 Charge prepared for McLeod by the EEOC is attached as Exhibit 3.   McLeod's Charge of Discrimination with the EEOC was timely filed.

32.   The EEOC issued McLeod a Dismissal and Notice of Right to Sue on her Charge of Discrimination on August 26, 2020.   McLeod timely sues.

## Causes of Action

### Title VII Sex Discrimination

33.   McLeod incorporates the preceding paragraphs as if fully restated.

34.   F&D is an employer for Title VII, 42 U.S.C § 42 U.S.C. 2000e(b).

35.   McLeod is a female employee as defined by 42 U.S.C. § 2000e(f).

36.   McLeod was qualified to perform her job duties at F&D

37.   F&D discriminated against McLeod in the terms and conditions of her employment and subjected her to disparate treatment as compared to male employees at F&D.

38.   F&D did not provide McLeod the same level of training as male Operations Managers.

39.   F&D subjected McLeod to harsher discipline than her male peers and disciplined her for things for which it did not terminate her male peers

40.   F&D discriminated against McLeod by terminating her because of her sex in violation of Title VII.

41.   F&D's stated reason for terminating McLeod is a pretext for sex discrimination.

42.   F&D violated Title VII by discriminating against her because of her sex.

43.   F&D's violation of Title VII damaged McLeod.  McLeod lost her income and benefits when she was fired.

44.   McLeod seeks to recover the damages to which she is entitled because of F&D's violation of Title VII, including equitable relief, the recovery of her back pay, lost employment benefits, front pay, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest and attorneys' fees and costs.

**Title VII Retaliation**

45.   McLeod incorporates the preceding paragraphs as if restated.

46.   F&D is an employer as defined by 42 U.S.C. §2000e(b).

47.   McLeod is an employee as defined by 42 U.S.C. §2000e(f).

48.   McLeod was qualified to perform her job duties at F&D.

49. During her employment, McLeod engaged in activity protected by Title VII. McLeod reported directly to Martin that several Hispanic/Latino females were subjected to discriminatory treatment by another F&D employee.

50. After McLeod reported to Martin the discriminatory treatment of the Hispanic/Latino females, Martin gave McLeod a negative performance review based on false and inaccurate information.

51. McLeod reported to F&D that Martin refused to consider hiring several qualified minority employees because of their minority status or relegating them to positions where they would not be seen easily. The candidates that Martin refused to consider were African American and Hispanic/Latino.

52. After McLeod reported that Martin was engaged in discriminatory activity, F&D, through Martin, gave McLeod a Letter of Concern that alleged her performance was deficient. This letter of concern was based on false and inaccurate information.

53. McLeod had a good faith belief she was reporting prohibited racial discrimination and sexual harassment.

54. F&D fired McLeod shortly after McLeod engaged in protected activity.

55. F&D's firing of McLeod is an adverse employment action.

56. F&D fired McLeod in retaliation for McLeod's protected activity.

57. F&D's stated reason for firing McLeod is a pretext for retaliation.

58.  F&D's retaliatory actions were taken with malice and/or a reckless disregard for McLeod's rights.

59.  F&D's retaliatory actions damaged McLeod.

60.  McLeod seeks to recover the damages to which she is entitled for F&D's violation of Title VII, including equitable relief, the recovery of her back pay, front pay, fringe benefits, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest and attorney's fees and costs.

## 42 U.S.C. §1981 Retaliation

61.  McLeod incorporates the preceding paragraphs as if restated.

62.  42 U.S.C. § 1981 prohibits race discrimination in the making of and enforcing of contracts.  This statute provides that "all persons … shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens."  This includes contracts of employment.

63.  This statute also protects employees who report violations of the law from retaliation.

64.  McLeod engaged in protected activity by reporting race-based discrimination to F&D.  McLeod reported discriminatory treatment against Hispanic/Latino employees directly to Martin.  After McLeod reported this discriminatory treatment of Hispanic/Latino employees to Martin, Martin gave McLeod a negative performance review based on false and inaccurate information.

65.   McLeod reported to F&D that Martin objected to her hiring an African American candidate and Hispanic/Latino candidates because Martin was trying "to change the image" of the store.  McLeod reported that Martin took one look at the African American female candidate and said, "I wouldn't have even talked to her." McLeod told Martin she wanted to put the Hispanic/Latino female candidate in the front end of the store.  Martin objected and told McLeod that the Hispanic/Latino female candidate could only work in the warehouse because he was "trying to change the image."  Martin told McLeod the Hispanic/Latino male candidate could only work overnight since he was "trying to change the image."

66.   McLeod objected to Martin's discriminatory actions.  After thinking about Martin's instructions for a few days, McLeod told Martin directly that she would offer the Hispanic/Latino candidates the jobs and put them where she initially wanted to put them.

67.   On March 7, 2018, McLeod reported Martin's discriminatory conduct by email to Banks. F&D received McLeod's complaint objecting to Martin's discriminatory activities and his objections to her efforts to hire the qualified minority candidates on March 7, 2018.  Banks acknowledged receipt of her email on the same. Banks advised McLeod that Banks would need to share McLeod's complaint with Mickey O'Sullivan because, as Martin's direct supervisor, O'Sullivan needed to be the person who held Martin accountable.  On information and belief, Banks shared the complaint with O'Sullivan and O'Sullivan shared it with Martin.

68.  Just days later, on March 9, 2018, Martin gave McLeod a Letter of Concern based on false and inaccurate information.  The Letter of Concern outlined perceived deficiencies in McLeod's performance, but those perceived deficiencies were based on false and inaccurate information.  The Letter of Concern gave McLeod  60 days to improve her performance.  F&D fired McLeod just 30 days later—well  before the 60 days was over and despite the fact  McLeod was successfully addressing the issues raised by the Letter of Concern.

69.  McLeod engaged in activity protected by this law on several occasions.  Each time McLeod did so, she suffered an adverse employment action.  But for McLeod's protected activities in opposing race discrimination against African American and Latino employees and candidates, F&D would not have retaliated against her by firing her.

70.  F&D retaliated against McLeod in violation of 42 U.S.C. § 1981.  F&D retaliated against McLeod in these ways:

   a.  Martin's giving McLeod a negative performance review based on false and inaccurate information shortly after she reported the discrimination against Hispanic/Latino employees directly to Martin;

   b.  Martin giving McLeod a Letter of Concern again based on false and inaccurate information after McLeod objected to Martin's refusal to allow her to hire African American and Hispanic/Latino employees and after

McLeod told Martin she would disregard his instructions and offer the Hispanic/Latino candidates the positions she initially wanted to offer them;

c.  F&D terminating McLeod just 33 days after McLeod reported Martin's discriminatory activities to F&D and terminating her before the end of the 60 days allotted to address the alleged performance deficiencies and ignoring that McLeod was successfully addressing the issues raised by the Letter of Concern.

71. F&D would not have retaliated against McLeod but for her protected activity.

72. F&D's stated reason for its actions are a pretext for retaliation.

73. F&D's retaliatory actions were taken with malice and/or a reckless disregard for McLeod's rights.

74. F&D retaliatory actions damaged McLeod.

75. McLeod seeks to recover the damages she suffered from F&D's retaliation in violation of 42 U.S.C. § 1918, including  equitable relief and reinstatement, the recovery of her back pay, lost employment benefits, front pay, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest and attorney's fees and costs.

## Jury Trial

76. McLeod demands a trial by jury.

## Prayer

WHEREFORE, Plaintiff Teresa McLeod prays this Court enter a judgment

declaring the acts and practices of Defendant violate the Title VII, and 42 U.S.C. § 1981

and enter such other and further relief to which Plaintiff is just entitled.

Respectfully submitted,

/s/ Karen K. Fitzgerald
Karen K. Fitzgerald
State Bar No. 11656750
Fitzgerald Law, PLLC
8150 N. Central Expy, 10th Floor
Dallas TX 75206
214.265.9958 (direct dial)
karen@fitzgerald.law

Attorney for Plaintiff Teresa McLeod

**CERTIFICATE OF SERVICE**

I certify that on January 25, 2021, I electronically filed the foregoing using the
Court's ECF system. The ECF system sent a "Notice of Electronic Filing" to these
individuals who have consented in writing to accept this Notice as service of this
document by electronic means:

Esteban Shardonofsky
Seyfarth Shaw LLP
700 Milam Street, Suite 1400
Houston TX 77002

Stacey Bentley
Seyfarth Shaw LLP
620 Eighth Avenue, 32nd Floor
New York, NY 10018

Michael Coles
The Coles Firm
4925 Greenville Avenue, Suite 200
Dallas TX 75206

*/s/ Karen K. Fitzgerald*
Karen K. Fitzgerald

## RE: Concerns

From: Banks, Tim (tbanks@flooranddecor.com)

To: teresa.mcleod@ymail.com

Date: Wednesday, March 7, 2018, 01:48 PM CST

Teresa,

      I appreciate the time and emotion that went into this letter. I will need to share it with Mickey and I will make clear your concerns over blow back. He is Adam's direct sup and needs to be the one who is holding Adam and the store team accountable. I will of course do everything I can to support you and the store as a whole. Thanks again, TB

# DIRTFT

**Tim Banks**

**Regional Operations - Central**

**Floor & Decor**

**2233 Lake Park Drive, Suite 400**

**Smyrna, GA 30080**

**404-471-1634 x2106**

**Tbanks@flooranddecor.com**

**flooranddecor.com**

*This e-mail and any files transmitted with it are the property of Floor & Decor, are confidential, and are intended solely for the use of the individual or entity to which this e-mail is addressed. If you are not one of the named recipient(s) or otherwise have reason to believe that you have received this message in error, please notify the sender at 404-471-1634 ext. 2106 and delete this message immediately from your computer. Any other use, retention, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited.*

**From:** Teresa Mcleod [mailto:teresa.mcleod@ymail.com]
**Sent:** Wednesday, March 7, 2018 1:36 PM



EXHIBIT

tabbies

1

1/3

**To: Banks, Tim <tbanks@flooranddecor.com>**
**Subject: Fw: Concerns**

On Wednesday, March 7, 2018 1:06 PM, Teresa Mcleod <teresa.mcleod@ymail.com> wrote:

TB - Good morning. I'm send this message from home because I have been off work dealing with flu symptoms. Even though I am here trying to rest I feel worried about the store. You and Mickey have both told me to reach out to you if I had issues. Well, even though I feel like I'm taking a huge risk by sending this email, (because of Adam's comments/threats of, "If anything happens you will be the one leaving, because I'm not going anywhere", I feel I have to get it off my chest.

I have done a good job at Floor and Décor for the past 2.5 years. I have always done my job with honesty and the utmost integrity. Since Adam took over, even though initially I thought it would be a breath of fresh air, some accountability and some support, I feel that we are failing as a whole. The failing SER score is truly devastating to me. I have asked time and time again for Adam to hold the managers accountable for their actions on the top 3 things that caused us a huge hit. However, that has not happened. He did a group write up, a few months back to include me, even though myself and a couple other managers had no misses concerning the write up. He tells me to do the write-ups now, but, the managers could care less what I say, and have voiced that out loud. They have also said they don't care what Adam or Mickey say, especially when it relates to OPS or KCM. Adam needs to hold the managers that are causing issues accountable, or nothing will ever change. There is only one DM that KCM's properly and that is Cheston and Adam and myself, when on the floor. The other managers are on their cell phones, outside smoking in the black vest, hanging out with the team talking trash, (because they hang out with each other after work), etc.....I have spoken to Adam about it and see no change.

For staffing as much as I am trying to get some people hired, I have had little or no help. In Oct./Nov. Mickey got involved and said the recruiter in Atlanta was going to get involved and send me prescreened apps etc....she sent 2, one cancelled and one wanted too much money, and that was the end of that !! Never got anything else from them. Then Stacy was supposed to get involved.....didn't happen. Last week she flew in, the hiring event was cancelled and she is not coming back for this weekends event. Last weekends event, of which I never got any details about from Adam until last minute, I was not even scheduled when I heard about it and he just told me to work that day. I do not feel supported and being short staffed already does not give me a lot of time to work on it. I have been working long hours already to try and keep us up to standards best I can and get people in here for interviews, but, its crazy. On two of the most recent accounts of hiring, I had one woman take a bus and switch buses for an hour and then walk 29 minutes in the rain to get to her interview with me....that tells me something about a person, she needed/ wanted to work. While she felt comfortable talking to me and said a couple crazy things that were going on in her life, I felt she had perseverance to show up for work if hired. Adam never spoke with her and from a glance, he told me "I wouldn't have even talked to her". I don't know what that meant, but, in the same conversation he said I'm trying to change the image here, did I mention she was black. Then, I had a Hispanic man and woman both with warehouse experience and supervisor/ lead experience, they lived right down the street and were eager to start at anything to get their foot in the door. I had a great interview with them. When I spoke with Adam about putting her on the front end and him in the warehouse, he said "No, she can work in the warehouse and he can work overnight, I'm trying to change the image". Again not sure what that means, but, after a couple days I decided to tell him I was bringing them in and putting them where I wanted initially, they had moved on. I feel I missed out on at least 2 possible great hires right there......

Back to the SER.....when I walk the safety audit daily, I document what I see, although I'm far from perfect and do miss things, I try to do the best walk with observations noted. As I look into the daily audits when I'm not there.....nothing gets noted, it looks like they are just keying in compliant answers to keep from getting into trouble for not doing it. THEY COULD CARE LESS.....and I'm not just talking DM's. As noted on the SER the "tool training binder", the display builder was supposedly trained on every tool the evening before the auditors arrived, they even questioned me about it. I did not know it had been filled out, as I had just reported in my monthly audit that "we have identified someone to be a trainer for tools, but, were not compliant yet". For bolts that were missed, it would help if Adam had done the quarterly racking review which I told him he had to do and sent an email reminder for....The auditors noted incomplete racking binder signoff as well, for the work when they built the LTL racks, and you noted missing bolts while you were there. The safety and security of the store must become a priority for the DM's and CEM as well at 104. At this time the main emphasis is only about sales and front store conditions, which will not help if someone gets hurt and sues.

As far as the action plan goes....Adam still has signoffs missing from the last action plan, and has not signed off on the new one at all yet. A spoke with him about several pallets not wrapped properly and some bolts that were noted to be installed, I asked for help with no answer...I had the overnight team pull down pallets in all departments and wrap them properly and started working on missing bolts.  He never assigned help or asked where we were with the project.  He forwarded me the message that Andy Stofanik and crew were coming into the store and didn't even tell the managers, I told them.  I don't think he gets Operations, he doesn't seem to know a lot about our procedures and then tries to argue when I tell him some of the things we need to do, sometimes.  For whatever  reason, it seems he refuses to take some of the accountability for OPS misses.

I don't know if Andy and Bobby walked the store or not as I was not there.

I hope and trust that you will use this message as a follow up, an insight to ask questions, as I can only assume that you are held accountable for the stores as well.

TB, I sincerely thank you for the opportunity I have had here and can only hope I have the opportunity to continue with my contribution to making Floor and Décor great.  I love working for you, but, I do not know how long I can sustain without a supportive leadership role in my store...

As my hubby said " this is crazy.......you and the store manager should be on the exact same page" !!

I also pray that I do not get retaliation from this note of honesty.

Sincerely,

Teresa

# EEOC (INQUIRY) NUMBER: 450-2018-05640

## Inquiry Information

### REASON(S) FOR CLAIM

**Date of Incident (Approximate):**  04/09/2018

**Reason for Complaint:** Age - I am 40 years of age or older, Sex (including pregnancy, sexual orientation and gender identity), Retaliation - I helped or was a witness in someone else's complaint about job discrimination

**Pay Disparity:**  No

**Location of Incident:**  Texas

**Submission (initial inquiry) Date:**  07/09/2018

**Claim previously filed as charge with EEOC?**  No

**Approximate Date of Filing:**  N/A

**Charge Number:**  N/A

**Claim previously filed as complaint with another Agency?**  No

**Agency Name:**  N/A

**Approximate Date of Filing:**  N/A

**Nature of Complaint:**  N/A

### INQUIRY OFFICE

**Receiving:**  Dallas District Office

**Accountable:**  Dallas District Office

### APPOINTMENT

**Appointment Date and time:**

**Interview Type:**

### APPROXIMATE DEADLINE FOR FILING A CHARGE:  02/03/2019

### POTENTIAL CHARGING PARTY

**First Name, Middle Initial:**  Teresa, L

**Last Name:**  Mcleod



EXHIBIT
2

**Street or Mailing Address:** 1013 Round Up Trail

**Address Line 2:**

**City, State, Zip:** Little Elm, TX, 75068

**Country:** UNITED STATES OF AMERICA

**Year of Birth:** 1962

**Email Address:** teresa.mcleod@ymail.com

**Home Phone Number:**

**Cell Phone Number:** (972) 998-3281

## RESPONDENT/Employer

**Organization Name:** FLOOR AND DECOR

**Type of Employer:** Business or non-profit organization that I applied to, work for, or worked for

**Number of Employees:** 20 or more employees

**Street or Mailing Address:** 2350 Alberta Drive

**Address Line 2:**

**City, State, Zip Code:** DALLAS,TX, 75229

**County:** Dallas

**Phone Number:** (972) 243-9230

## RESPONDENT CONTACT

**First and Last Name:** Stacy Gonzales

**Email Address:** stacy.gonzales@flooranddecor.com

**Phone Number:**

**Title:** Human Resources Director or Owner

## LOCATION OF POTENTIAL CHARGING PARTY'S EMPLOYMENT

**Street or Mailing Address:**

**Address Line 2:**

**City, State, Zip Code:**

**County:**

## POTENTIAL CHARGING PARTY'S DEMOGRAPHICS

**Gender:** F

**Disabled:** I do not have a disability

**Are you Hispanic or Latino?** not hispanic or latino

**Ethnicity:** White,

**National Origin:** Other

## Adverse Action(s)

Terminated on 4/9/18. Paperwork states "job performance". This event occurred after I had complained about a senior manager, and reported him for racial statements. Also, of note and my main concern.....there have been several men at my level or above in the company that have all been "demoted" a level, but, kept their jobs with the company for job performance, I am the only one termed. This includes the Regional Manager that was involved with my termination, he was demoted 2 levels after I was gone. Certainly, this is retaliation for the conflicts and complaints I brought up to them. I have had an impeccable work record my entire life, as well as with this company. I still have people from the company calling me to say they do not understand. I'm devastated to say the least, and truly embarrassed when I try to talk to others about a job and tell them I was terminated. I was an Operations manager, so second in command with 50 direct reports.

# Supplemental Information

## What Reason(s) were you given for the action taken against you?

Job Performance

## Was anyone in a similar situation treated the same, better, or worse than you?

These MALE mangers were ALL demoted one or two levels down, BUT, KEPT THEIR JOBS with the company for job performance: Bob Kirby - demoted 2x still with company. Darren Jackson - demoted - still with the company. Mickey O'Sullivan - demoted down 2 levels - still with company. Matt Nall same - still with company. Tim Banks - same - still with company. And others I can not remember.

**Please provide name(s) and email and/or phone number of anyone who will support your claim, and briefly describe the information this person will provide.**

Michael Wakefield 214-727-7426 - Also, reported discrimination to corporate.  He overheard manager Mickey O'Sullivan yelling and being derogatory on Jan. 31, 2018.   Decresa Law 214-403-5916 also reported discrimination to corporate.

**Please tell us any other information about your experience?**

My main concern is that I am an over 40 female with a flawless work record and I was let go for job performance, while there were several male managers at my level or above, (in the last 2.5 years), that all had job performance issues and ALL of them were demoted down one level, or two levels and they ALL kept their jobs.  I am the only female manager that has been termed.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 450-2018-05640 |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Mrs. Teresa L Mcleod | (972) 998-3281 | 1962 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1013 Round Up Trail, LITTLE, TX 75068 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| FLOOR AND DECOR | | (972) 243-9230 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2350 Alberta Drive, DALLAS, TX 75229 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION<br>☐ OTHER *(Specify)* | Earliest: 03-09-2018  Latest: 04-09-2018<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**I. Personal Harm**

I began working for Respondent on August 28, 2015, as an Operations Manager. On March 9, 2018, I was given a letter of concern, and given 60 days to improve and perform to a satisfactory level. I was terminated on April 9, 2018, just 17 days after being issued the letter of concern.

**II. Reason Given by Respondent for Adverse Action Taken**

I was not given any reason. Similar situated employees such as Matt Swan, Operations Manger, Darren Jackson, Operations Manager had similar work performance issues and were only demoted. They all kept their jobs.

**III. Discrimination Statement**

I believe that I have been discriminated against because of my sex (female), in violation of Title VII of the Civil Rights Act of 1964,

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Digitally signed by Teresa Mcleod on 08-02-2018 12:01 PM EDT | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EXHIBIT
3

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 450-2018-05640 |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| *State or local Agency, if any* | |

as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Teresa Mcleod on 08-02-2018 12:01 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.    **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2.    **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.    **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.    **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.    **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.